# United States Court of Appeals for the Federal Circuit

—————————

**SOCKET SOLUTIONS, LLC,**
*Plaintiff-Appellee*

**v.**

**IMPORT GLOBAL, LLC,**
*Defendant-Appellant*

—————————

2025-1121

—————————

Appeal from the United States District Court for the Southern District of Florida in No. 1:23-cv-24517-DSL, Judge David S. Leibowitz.

—————————

Decided: August 4, 2026

—————————

EDWARD H. RICE, Rice Technology Law Group, Northbrook, IL, argued for plaintiff-appellee. Also represented by MARINA SAITO.

TIMOTHY W. JOHNSON, Mitby Pacholder Johnson PLLC, Houston, TX, argued for defendant-appellant.

—————————

Before MOORE, *Chief Judge*, PROST, *Circuit Judge*, and SEEBORG*, District Judge.*[1]

MOORE, *Chief Judge.*

Import Global, LLC (Import Global) appeals the United States District Court for the Southern District of Florida's grant of a preliminary injunction barring Import Global from manufacturing, using, selling, offering to sell, or importing into the United States its Neat Socket® product. For the reasons below, we vacate the district court's grant of a preliminary injunction and remand for further proceedings consistent with this opinion.

## BACKGROUND

Socket Solutions, LLC (Socket Solutions) owns U.S. Patent No. 9,509,080, which is directed to an indoor electrical wall outlet cover that permits use of a wall outlet while concealing the outlet contact openings. '080 patent at Abstract. Socket Solutions sued Import Global, alleging Import Global's Neat Socket product infringed claim 19 of the '080 patent, and moved for a preliminary injunction. J.A. 104–05; *Socket Sols., LLC v. Imp. Glob., LLC*, No. 1:23-CV-24517, 2024 WL 4343485 (S.D. Fla. Sept. 29, 2024) (*Preliminary Injunction Order*). Claim 19 recites:

> 19. An apparatus for hiding a standard indoor electrical wall outlet having at least two receptacles while affording continued use of said outlet, the apparatus comprising:
>
> a. a cover comprising:
>
>> (i) a frontplate; and

---

[1]    Honorable Richard Seeborg, District Judge, United States District Court for the Northern District of California, sitting by designation.

(ii) a *backplate* comprising at least one set of electrical prongs including a hot prong, a neutral prong, and optionally a ground prong, positioned to correspond to a first receptacle of the wall outlet; and

b. an electrical cord extending from the backplate, or the cover, said cord comprising at the cord's proximal end: *at least one hot pin, at least one neutral pin* and optionally a ground wire positioned on or fastened or attached to the backplate of the cover in such manner as to minimize distance between the front plate and the backplate, and respectively connected to or associated with the hot prong, neutral prong and any ground prong on the exterior of the backplate; and comprising at the cord's distal end at least one receptacle, and wherein the height of the hot pin, neutral pin, and any ground wire is approximately the same or less than the thickness of the cord.

'080 patent at 8:65–9:20 (emphases added).

The district court referred Socket Solutions' preliminary injunction motion to a magistrate judge, who issued (1) a report and recommendation on claim construction, J.A. 72–91, and (2) a report and recommendation that the district court grant the motion, J.A. 28–51. J.A. 372. The district court adopted both reports and recommendations and granted Socket Solutions' preliminary injunction motion.[2] *Preliminary Injunction Order*, 2024 WL 4343485, at

---

[2]    The district court adopted the report and recommendation on claim construction, with slight modifications to two terms not at issue on appeal. *Socket Sols., LLC v.*

*11; *Socket Sols., LLC v. Imp. Glob., LLC*, No. 1:23-CV-24517, 2024 WL 4314772, at *9 (S.D. Fla. Sept. 27, 2024) (*Claim Construction Order*).

The preliminary injunction enjoins Import Global from manufacturing, using, selling, offering to sell, or importing into the United States its accused Neat Socket product and other products "not more than colorably different from" the accused products in the context of the '080 patent. J.A. 24–25. The injunction also prohibits Import Global from inducing others to do the same. *Id.* Import Global appeals. We have jurisdiction under 28 U.S.C. § 1292(c)(1).

## DISCUSSION

We review the grant of a preliminary injunction according to the law of the regional circuit, here the Eleventh Circuit, except for patent-specific issues, which we review according to Federal Circuit law. *Koninklijke Philips N.V. v. Thales DIS AIS USA LLC*, 39 F.4th 1377, 1379 (Fed. Cir. 2022). We and the Eleventh Circuit review the grant of a preliminary injunction for abuse of discretion. *Id.*; *Gonzalez v. Governor of Georgia*, 978 F.3d 1266, 1270 (11th Cir. 2020). A district court abuses its discretion when it makes a clear error of judgment in weighing relevant factors or exercises its discretion based upon an error of law or clearly erroneous factual findings. *Koninklijke*, 39 F.4th at 1379.

To obtain a preliminary injunction, a party must establish "that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1352

---

*Imp. Glob., LLC*, No. 1:23-CV-24517, 2024 WL 4314772, at *1, *9 (S.D. Fla. Sept. 27, 2024) (*Claim Construction Order*).

(Fed. Cir. 2016) (alterations in original) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

Import Global appeals the district court's grant of a preliminary injunction, arguing the district court erred in analyzing (1) likelihood of success and (2) irreparable harm. Appellant's Br. 16–33. Because the district court erred in construing the terms "backplate" and "pin" in its likelihood of success analysis, we vacate the district court's grant of a preliminary injunction and remand for the court to re-evaluate the likelihood of success of Socket Solutions' '080 patent infringement claim. We do not reach the merits of the irreparable harm issue.

## I. Likelihood of Success

To demonstrate a likelihood of success on the merits, a patentee must show, among other things, that it will likely prove infringement of the asserted patent. *Metalcraft of Mayville, Inc. v. The Toro Co.*, 848 F.3d 1358, 1364 (Fed. Cir. 2017). Infringement is a question of fact, and we review the district court's infringement findings for clear error. *Id.* We review the district court's claim construction de novo except for subsidiary fact findings, which we review for clear error. *Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229, 1235–36 (Fed. Cir. 2017).

On appeal, Import Global argues the district court's likelihood of success analysis was based on an incorrect construction of the terms "backplate" and "pin." Appellant's Br. at 16–30. We address each construction in turn.

## A. "backplate"

Import Global argues the district court erred in construing "backplate" to mean "the component of the cover, opposing the front[]plate, that includes at least one set of electrical prongs." Appellant's Br. 16. According to Import Global, this construction is inconsistent with the claim language because claim 19 does not define "backplate" relative to the "frontplate" but rather as an independent element of

the "cover," which the district court construed as "a structure that encloses the electronical components and hides a standard indoor electric wall outlet." Appellant's Br. 18–21; '080 patent at 9:1–6; *Claim Construction Order*, 2024 WL 4314772, at *4. Import Global further argues the written description teaches that the "cover" is thin and that "cover" thickness is measured by the distance between the "frontplate" and the "backplate at the cover's central portion." Appellant's Br. 25–26. In Import Global's view, the correct construction of "backplate" is the "portion of the apparatus closest to the wall outlet when the apparatus is plugged into the wall outlet." Appellant's Br. 16.

While we agree the district court erred in its construction, we do not agree "backplate" is defined in relation to the wall outlet. The parties agree the "backplate" is a portion of the cover situated between the "frontplate" and the wall outlet. Appellant's Br. 24; Appellee's Br. 23. Both the district court's construction and Import Global's proposed construction, however, impose spatial reference requirements (either in relation to the "frontplate" or the wall outlet) that the specification does not require. *See, e.g.*, '080 patent at 9:1–13 (reciting a "cover comprising" two components: a "frontplate" and a "backplate" where "at least one hot pin, at least one neutral pin and optionally a ground wire [is] positioned on or fastened or attached to the backplate . . . in such manner as to minimize distance between the front[]plate and the backplate"). Thus, we do not construe "backplate" to require a spatial reference requirement in relation to the "frontplate" or the wall outlet.

Rather than defining "backplate" in relation to the "frontplate" or the wall outlet, a construction that focuses on "cover" thickness most naturally aligns with the specification. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (en banc) ("The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction."). Here, the written description

explicitly defines "cover" thickness in relation to the "backplate." '080 patent at 4:35–39 ("Cover 15 is as thin as the thickness of the combination of the frontplate component 12 mounted on the backplate component 14 . . . ."); *see also id.* at 3:56–60 ("The maximum distance between the backplate component 14 and the frontplate component 12 is approximately the height or thickness of the electrical cord 16 connected to or attached to the backplate component 14, and this distance is only in the main body or central portion of the cover 15 . . . ."), 1:47–51. We construe "backplate" as "the component forming the cover with the frontplate, such that the maximum thickness of the cover is the distance, at the central portion of the cover, between the frontplate and the component."[3]

## B. "pin"

Import Global next argues the district court incorrectly construed "pin" in claim 19 as "a means for making an electrical connection between the [hot/neutral] wire and the [hot/neutral] prong." Appellant's Br. 26. Import Global argues the district court's construction improperly converts "pin" into a means-plus-function term under 35 U.S.C. § 112(f). Appellant's Br. 26–27. According to Import Global, the correct construction of "pin" is a "mechanical system for making an electrical connection between the [hot/neutral] wire and the [hot/neutral] prong."

---

[3]    The district court's construction contains the limitation "that includes at least one set of electrical prongs." *Claim Construction Order*, 2024 WL 4314772, at \*9. Claim 19, however, adds this limitation. '080 patent at 9:3–6; *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 801, 810 (Fed. Cir. 2021) ("It is highly disfavored to construe terms in a way that renders them void, meaningless, or superfluous."). We do not agree that the term "backplate" in all instances requires electrical prongs.

Appellant's Br. 26.  We agree the district court incorrectly construed "pin" as a means-plus-function term.

Under 35 U.S.C. § 112(f), a patentee may draft claims "as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof."  But such claims are construed to cover only "the structure, materials, or acts described in the specification as corresponding to the claimed function and equivalents thereof." *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1347 (Fed. Cir. 2015).  When a claim term lacks the word "means," there is a rebuttable presumption that § 112(f) does not apply.  *Id.* at 1349.  But that presumption can be overcome "if the challenger demonstrates that the claim term fails to recite[] sufficiently definite structure or else recites function without reciting sufficient structure for performing that function." *Id.* at 1348 (alteration in original) (quotation marks and citation omitted).  To determine whether a term recites sufficient structure, we look at whether the "term, as the name for structure, has a reasonably well understood meaning in the art." *Watts v. XL Sys., Inc.*, 232 F.3d 877, 880–81 (Fed. Cir. 2000) (citation omitted).

The claim term "pin" does not use the word "means," so there is a presumption that § 112(f) does not apply.  The written description further defines "pin" in structural terms.  *See, e.g.*, '080 patent at 2:15–17 ("[t]he electrical connection component in one embodiment has electrical pins bent at approximately ninety degree angle"), 4:53–55 ("[a]n integral aspect of this embodiment is connection of the electrical pins 18 and 28, through respective plug prongs 20 and 30").  And the parties do not dispute "pin" in the context of the '080 patent is understood by skilled artisans to be a structure.  Appellant's Br. 27; Appellee's Br. 32.  Thus, the presumption that § 112(f) does not apply has not been overcome.

Although Socket Solutions does not dispute that "pin" is a structure, it argues the district court's construction is proper because we have previously construed claimed structures in purely functional terms without triggering § 112(f) when the structural element is best defined by its function. Appellee's Br. 30–33; *see, e.g.*, *Hill-Rom Servs. v. Stryker Corp.*, 755 F.3d 1367, 1374–75 (Fed. Cir. 2014) (defining "datalink" as "a link that conveys data"). According to Socket Solutions, "pin" is best defined by its function: "a structure that physically and electrically connects the electrical wires to the corresponding electrical prongs." Appellee's Br. 30–33. We do not agree. Not everything that "physically and electrically connects the electrical wires to the corresponding electrical prongs" is a "pin." Import Global proposes construing "pin" as a "mechanical system for making an electrical connection between the [hot/neutral] wire and the [hot/neutral] prong." Appellant's Br. 26. There is no support in the specification, however, to construe "pin" as a "mechanical system," which may include complex interconnected systems that a skilled artisan would not understand to be a "pin." *See* '080 patent at 9:9–12; *see also id.* at 2:15–17, 4:53–55. Because a purely functional definition would be overly broad, "pin" should be given its plain and ordinary meaning as understood by a skilled artisan.

"We depart from the plain and ordinary meaning of claim terms based on the specification in only two instances: lexicography and disavowal." *Hill-Rom*, 755 F.3d at 1371 (citation omitted). We see no definition or disavowal of claim scope in the specification. Further, we have been shown no prosecution history that is to the contrary. As a result, we see no basis for departing from the plain and ordinary meaning of the term "pin."

## II. Irreparable Harm

Because we remand to the district court on the likelihood of success factor, we do not reach Import Global's

irreparable harm arguments.  We hold only that the court erred to the extent it relied on a presumption of irreparable harm when a clear showing of patent validity and infringement has been made.  *Preliminary Injunction Order*, 2024 WL 4343485, at \*11 (citing *Pfizer, Inc. v. Teva Pharms., USA, Inc.*, 429 F.3d 1364, 1380 (Fed. Cir. 2005)); J.A. 47 (citing *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001)).  We note that this presumption cannot be justified after *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 393–94 (2006).

In *eBay*, the Supreme Court reversed a grant of permanent injunction where the appeals court applied a "general rule" unique to patent disputes "that a permanent injunction will issue once infringement and validity have been adjudged."  547 U.S. at 393–94 (citation omitted).  The Supreme Court explained that patent disputes are no different than in other cases governed by the "traditional principles of equity," and thus the traditional four-factor framework should apply.  *Id.*  After *eBay*, we confirmed the presumption of irreparable harm was abolished as it applied to determining injunctive relief.  *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1149 (Fed. Cir. 2011) ("We take this opportunity to put the question to rest and confirm that *eBay* jettisoned the presumption of irreparable harm as it applies to determining the appropriateness of injunctive relief.").  Although *eBay* and *Bosch* involved permanent injunctions, we see no reason to depart from their holdings in the preliminary injunction context.

It is not clear here that the district court applied the presumption of irreparable harm to its fact findings rather than simply note there is such a presumption.  *Preliminary Injunction Order*, 2024 WL 4343485, at \*11; J.A. 47.  In any event, the court may analyze irreparable harm in a manner that does not rely on the presumption, if it reaches this issue on remand.

CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive. For the foregoing reasons, we vacate the district court's grant of a preliminary injunction and remand for further proceedings consistent with this opinion.

**VACATED AND REMANDED**

COSTS

Costs to Import Global.